# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

JASON D. O'NEAL, et al.,

                Plaintiffs,

v.                                                   CIVIL ACTION NO. 5:10-cv-00446

SPEED MINING LLC, et al.,

                Defendants.

## MEMORANDUM OPINION AND REMAND ORDER

The Court has reviewed Plaintiffs' Motion for Leave to File Attached Amended Complaint [Docket 28], Defendants' Response [Docket 38], Plaintiffs' Reply [Docket 40] and Plaintiffs' Supplemental Motion for Leave to File Attached Amended Complaint [Docket 59]. In these motions, Plaintiffs seek to amend their Complaint by joining a non-diverse party, which would necessitate that this Court remand this civil action to the Circuit Court of Wyoming County. After careful consideration, the Court grants Plaintiffs' motion.

### *I. BACKGROUND AND PROCEDURAL POSTURE*

On June 20, 2009, Plaintiff Jason O'Neal was apparently employed by Defendant Speed Mining ("Speed Mining") at an underground coal mine of Defendant Patriot Coal Corporation ("Patriot Coal"). He alleges that, on that day, a shuttle car struck and ran him over, severing his torso and resulting in catastrophic injuries to his person. His initial Complaint alleges that the shuttle car was designed, manufactured, and/or distributed by Defendants Baughan Group ("Baughan"), Joy Technologies ("Joy"), and CAI Industries ("CAI"). On March 3, 2010, Speed

Mining and Patriot Coal received service of the summons and Complaint from Plaintiffs' civil action in the Circuit Court of Wyoming County, West Virginia. Defendants removed this case to this Court on April 5, 2010, pursuant to 28 U.S.C. §§ 1332(a) and 1441(a).

On April 12, 2010, Joy filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6). It argued that the shuttle car at issue in this case was not one of its products, but was rather designed, manufactured, and sold by CAI. In support of this argument, Joy attached to its motion several documents which it argued demonstrated that other entities had extensively modified the shuttle car at issue. Plaintiffs initially moved to strike these attached documents, arguing that they were "fugitive" documents neither referenced nor authenticated in any affidavit or sworn testimony produced by Joy. Joy then filed an affidavit purporting to authenticate these documents as business records of the company responsible for modifying the shuttle car.

Plaintiff filed this motion on May 12, 2010. They argue that the documents produced by Joy indicate that an entity named "Gauley-Robertson" participated in the design, manufacture, and sale of the shuttle car in 2006. Plaintiffs seek to add Gauley-Robertson as a defendant in this civil action. Gauley-Robertson is apparently the assumed name of Robertson, Inc., a West Virginia corporation. Therefore, as the joinder of Gauley-Robertson would destroy diversity of citizenship, this Court is obligated to remand this case to the Circuit Court of Wyoming County if Plaintiffs' motion is granted. On September 2, 2010, Plaintiffs filed a supplement [Docket 59] to their motion. They indicate that discovery responses filed by Patriot Coal confirm that Gauley-Robertson sold the shuttle car to a mining company.

## *II. APPLICABLE LAW*

28 U.S.C. §1447(e) provides that "[i]f after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." "These are the only two options for a district court faced with a post-removal attempt to join a nondiverse defendant; the statute does not allow a district court to retain jurisdiction once it permits a nondiverse defendant to be joined in the case." *Mayes v. Rapoport*, 198 F.3d 457, 462 (4th Cir. 1999). In determining whether to allow the joinder of a non-diverse defendant, the court should consider "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether the plaintiff has been dilatory in asking for amendment, whether the plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." *Id.* (internal citations omitted). When a plaintiff seeks to add a nondiverse defendant immediately after removal but before any additional discovery has taken place, district courts should be wary that joinder is sought for the specific purpose of avoiding federal jurisdiction. *Id.* at 463. A plaintiff who seeks to add a non-diverse party whose identity was uncovered via discovery and whose actions are not distinct from the existing defendants is not seeking joinder for the specific purpose of avoiding federal jurisdiction. *Dobbs v. JBC of Norfolk, Va., Inc.*, 544 F.Supp.2d 496, 499 (E.D.Va. 2008). Under Section 1447(e), the decision of whether to permit joinder "is committed to the sound discretion of the district court." *Mayes*, 198 F.3d at 462.

Moreover, a party "alleging fraudulent joinder bears a heavy burden-it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor . . . This standard is even more favorable to the plaintiff than the standard for ruling on a motion to

dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transportation, Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232-33 (4th Cir. 1993)).

## *III. ARGUMENT*

Plaintiffs argue that they are not seeking to join Gauley-Robertson for the specific purpose of defeating diversity. They state that they learned the identity of Gauley-Robertson only after Joy produced business records that were previously unavailable to Plaintiffs. Plaintiffs argue that since they learned about the identity of Gauley-Robertson due to "discovery" in this litigation and because their claim against Gauley-Robertson is not distinct from their pre-existing products liability claims, they are not seeking to join Gauley-Robertson for the purpose of avoiding federal jurisdiction

Plaintiffs distinguish their case from that of *Gum v. General Electric Co.*, 5 F. Supp. 2d 412 (S.D. W. Va. 1998) (Haden, C.J.). In *Gum*, Chief Judge Haden held that the plaintiff's post-removal motion to join a non-diverse party was "submitted primarily for the purpose of defeating federal jurisdiction." *Gum*, 5 F. Supp.2d at 414. "[U]nlike the instant case," according to Plaintiffs, "there was no evidence that the plaintiff in *Gum* had learned identity of the nondiverse defendant as a result of information obtained during discovery. (In fact, the Court suggested that the plaintiff in *Gum* could have included the non-diverse party in the original complaint.)" (Docket 29 at 6). Plaintiffs, in the instant case, also point out that the new allegations in *Gum* were factually distinct from those against the existing defendants, which suggested that the plaintiff intended to destroy diversity as he was greatly expanding the scope of the original lawsuit by adding parties that he could have identified from the very beginning. Plaintiffs, accordingly, conclude that the instant case and *Gum* are distinct in that they only learned about Gauley-Robertson's identity via the information provided by Joy, and their claim against Gauley-Robertson both involves the same shuttle car and would also

4

be "virtually identical," *id.*, to their claims against the existing products liability defendants. According to Plaintiffs, they would have named Gauley-Robertson as a defendant in their original complaint if they had access to Defendants' business records prior to filing suit.

Plaintiffs also argue that they have not been dilatory in seeking to join Gauley-Robertson, and that they will be significantly harmed if they cannot resolve their products liability claims against all defendants in the same forum. They further state that the existing Defendants will not be unduly prejudiced by the proposed joinder:

> It is a common practice, with respect to a products liability claim, for all parties in the chain of design, manufacture, and distribution to be sued. Thus, it was forseeable to all of the Defendants that once the identity of such parties became known during the course of discovery, that Plaintiffs would seek to add such parties to the litigation and that this Court's diversity jurisdiction would be potentially destroyed. In addition, given the fact that the substantive litigation in this case is still in its infancy, there is simply no "law of the case" that has been developed by the Court in this matter that might be misconstrued or misapplied by the state court of origin following remand.

*Id.* at 8.

Defendants strenuously object to Plaintiffs' motion, and argue that their primary purpose for seeking leave to amend their Complaint is to defeat diversity of citizenship.[1]

> This purpose is obvious in light of both the timing of the amendment and the various motions filed by Plaintiffs until this point. Thus far, Plaintiffs have challenged the removal of this action on every conceivable ground. However, they go on to argue that their claims against Gauley-Robertson are not 'made for the specific purpose of avoiding federal jurisdiction' . . . However, given the tenacity with which Plaintiffs have fought for the remand of this case, it is undeniable that the avoidance of a federal forum has figured heavily into Plaintiffs' decision to seek leave to amend their Complaint to include a non-diverse defendant.

---

[1] They do not, however, contest Plaintiffs' other arguments.

(Docket 38 at 4). Defendants also claim that Plaintiffs' ulterior motives can be evidenced by the fact that they sought to join Gauley-Robertson before any discovery had been taken. Moreover, they argue that Plaintiffs, via documents that they previously referred to as "fugitive" are seeking to add a party whose involvement in the case and liability are speculative. They claim that any reasonable plaintiff would want more facts against a potential defendant than those Plaintiffs are relying upon, and that "[t]here has been no testimony from any party to this litigation implicating Gauley-Robertson as anything but a purely nominal party." *Id.*

Defendants point out with skepticism that "[w]ith the exception of adding a non-diverse defendant, no other revisions are contained within the proposed amendments." *Id.* Defendants conclude that "[t]hough Plaintiffs' counsel claims to have only discovered the identity of Gauley-Robertson, it was somehow able to identify its parent corporation, the Baughan Group, as well as a co-subsidiary, CAI Industries, when filing the original complaint. Plaintiffs had every opportunity to identify Gauley-Robertson prior to the filing of this action. Plaintiffs, however, did not seek leave to amend their Complaint until after Defendants rebutted their numerous challenges to this Court's jurisdiction. Now, Plaintiffs seek to destroy diversity through the joinder of Gauley-Robertson." *Id.* at 5.

Plaintiffs make several arguments and rebuttals in their reply. As Defendants concede that Plaintiffs are not seeking to bring any new claims, but instead only add an additional party, "this fact is evidence that Plaintiffs *do not* seek to join Gauley-Robertson solely for the purpose of defeating jurisdiction. It is unclear whether Defendants simply do not understand the existing case law on this point or are choosing to ignore it." (Docket 40 at 3) (emphasis in original). While Defendants also argue that Plaintiffs are seeking to amend before discovery had begun, Plaintiffs respond that

6

"Defendants do not dispute that Plaintiffs learned of the identity of Gauley-Robertson (and its involvement in the modifications made to the shuttle car at issue) as a result of obtaining [the] business records [from Joy].  The Defendants do not allege that Plaintiffs had access to these business records (or the business records of any other party, for that matter) prior to filing their lawsuit or prior to removal.  Therefore, Plaintiffs clearly discovered the identity of Gauley-Robertson after the litigation commenced (and after this matter was removed)." Id at 4.  They argue that Defendants' apparent position is that Plaintiffs were required to uncover the identity of Gauley-Robertson through formal discovery.  Plaintiffs state that this is "patently absurd," *id.*, as requiring formal discovery would contravene the requirement in *Mayes* that a plaintiff cannot be dilatory in seeking to join a potential non-diverse defendant.

Finally, in response to Defendants' argument that Gauley-Robertson may be a nominal party, Plaintiffs suggest that Defendants may be trying to argue that Plaintiffs are engaging in fraudulent joinder by adding Gauley-Robertson.  Plaintiffs argue that this claim fails.

> Defendants cannot, with a straight face, argue that there is no possibility that Plaintiffs can state a cause of action against Gauley-Robertson in state court. Plaintiffs' claims against Gauley-Robertson, as an alleged manufacturer and distributor of a defective product, are completely identical to Plaintiffs' claims against the other alleged designers, manufacturers, and distributors of the same product. These claims involve the straightforward application of well-settled West Virginia products liability law. None of the existing products liability defendants have asserted that there is no possibility that Plaintiffs can recover against them, should the facts be resolved in Plaintiffs favor.  Thus, to the extent that the Defendants attempt to argue that joining Gauley-Robertson as a defendant would amount to fraudulent joinder, the argument is clearly devoid of merit.

*Id.* at 6.

## V. DISCUSSION

The Court finds that Plaintiffs have met the requirements set forth in *Mayes*, and will accordingly grant their motion to amend and, therefore, remand this case to the Circuit Court of Wyoming County.

First, the Court finds that Plaintiffs are not seeking to join Gauley-Robertson for the sole purpose of defeating federal jurisdiction. Plaintiffs were not aware of Gauley-Robertson's involvement with the shuttle car at the time they originally filed suit. Upon becoming aware of Gauley-Robertson's involvement, they promptly sought leave to amend. Moreover, while they sought to join Gauley-Robertson before formal discovery commenced, as Defendants point out, they "discovered" Gauley-Robertson through Joy's motion to dismiss, as well as subsequent discovery. The Court finds that, contrary to Defendants' arguments, this method of uncovering Gauley-Robertson's existence is not inappropriate. Moreover, unlike in *Gum*, Plaintiffs are not trying to engineer the destruction of federal jurisdiction by adding entirely new claims and expanding the scope of the litigation. Rather, Plaintiffs are making a product liability claim against Gauley-Robertson just as it is against other such defendants.

Defendants' other arguments are also unsuccessful. Their argument that Gauley-Robertson may be a nominal party is without merit. If Defendants are making a fraudulent joinder argument, as Plaintiffs hypothesize, Defendants have not shown that Plaintiffs cannot establish a claim even after resolving all issues of law and fact in the latter's favor. As Gauley-Robertson was involved with the shuttle car at issue, Plaintiffs could have a claim against it. Finally, Defendants' efforts to point the court to Plaintiffs' litigation as it relates to removal does not assist them in meeting the heavy burden imposed by *Hartley*.

Finally, the Court finds that the other requirements of *Mayes* have been met. The Plaintiffs have not been dilatory in seeking to join Gauley-Robertson, as they timely filed the instant motion. Moreover, Plaintiffs could very well be prejudiced by having to litigate their products liability case in two different courts at once. Lastly, the Court agrees with Plaintiffs that it should have been foreseeable to Defendants that Plaintiffs would seek to add potentially non-diverse parties to the litigation if or when the identity of parties involved in the chain of design, manufacture, and distribution of the shuttle car became known during the course of discovery.

## V. CONCLUSION

For the reasons stated above, the Court **ORDERS** Plaintiffs' Motion for Leave to File Attached Amended Complaint [Docket 28] and Supplemental Motion for Leave to File Attached Amended Complaint [Docket 59] **GRANTED**. Therefore, the Court **REMANDS** this case to the Circuit Court of Wyoming County for further proceedings. Accordingly, the Court **ORDERS** the pending motions in this case [Docket 10, 13, 16, 20, 21, 33, 41 and 52] **DENIED** as **MOOT**.

The Court **DIRECTS** the Clerk to send copies of this Remand Order to all counsel of record and any unrepresented party and a certified copy to the Clerk of the Circuit Court of Wyoming County.

ENTER: October 4, 2010

_____
IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

9